**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| Krystal Leanne Hodges, Individually, and as the Appointed Personal Representative of the Estate of Devin Pressley Hodges,  )<br>)<br>)<br>) | Civil Action No.: |
| Plaintiff,  ) | **COMPLAINT** |
| )<br>vs.  )<br>) | |
| The United States of America,  )<br>) | |
| Defendant.  )<br>_____  ) | |

Plaintiff, by and through her undersigned counsel, complaining of Defendant, hereby alleges as follows:

**UNITED STATES ARMY CORPS OF ENGINEERS AND ITS EMPLOYEE'S CONSCIOUS DISREGARD FOR SAFETY**

1. On the morning of June 1, 2017, the U.S. Army Corps of Engineers ("USACE") was conducting an on-water training session, whereby one of its employees, Jess Fleming ("Fleming"), was instructing two Anderson County Sheriff's Office ("ACSO") Deputies – Juvan Chau and Devin Hodges.

2. In the course of the training, Mr. Fleming, a boating safety instructor for the USACE, attempted an "emergency stop" in an ACSO vessel.

3. The maneuver consisted of operating the ACSO vessel at a high speed directly towards a red buoy until the vessel got within thirty feet of the buoy, then steering the vessel "very hard" to the left and pulling back the throttle.

4. Mr. Fleming first performed the maneuver at approximately half throttle without incident and then, unbelievably, attempted to perform the maneuver a second time at a much higher

1

rate of speed – somewhere between three-quarters and full throttle.

5. All three occupants were thrown from the boat and the vessel continued to run unmanned in a circle near where its previous occupants treaded water in an ominous pattern commonly referred to as a "circle of death."

6. Instructor Fleming knew of this potential danger since he instructed different people and organizations on boat maneuvers and marine safety for nearly 8 years.

7. Tragically, on June 1, 2017, Deputy Hodges was in the path of the boat as it began its "circle of death," and before he could do anything to avoid it, the vessel ran him down.

8. As it passed over him, the propeller repeatedly struck Deputy Hodges causing severe blunt force trauma before eventually pulling him under the water to drown.

9. A coroner ruled Deputy Hodges' death was a result of asphyxia due to fresh water drowning with blunt force trauma (propeller injuries) being a contributing factor.

10. The day prior to Deputy Hodges' tragic and preventable death, the same group (Fleming, Hodges and Chau) spent the day on the water discussing the importance of various marine safety equipment, including, a "kill-switch" and safety lanyard.

11. Water-borne vessels are equipped with safety lanyards that are attached at one end to what is known as a "kill-switch." The lanyard's other end is designed to be attached to the operator of the vessel so that if an operator is thrown out of the vessel (or moves away from the operator console for other reasons), the lanyard will pull out of the kill-switch and immediately shut off the vessel's engine.

12. This keeps an unmanned vessel from continuing down the waterway or creating a "circle of death."

13. Mr. Fleming underwent multiple training exercises prior to this incident and was either in possession of, or familiar with, numerous safety instruction materials, manuals, and/or other

material, all of which state it is mandatory for any boat or water-borne vessel to have an operable kill switch when used in training exercises.

14. On June 1, 2017, Mr. Fleming did not discuss, attach, or even look at the safety lanyard on his training boat prior to performing the "emergency stop" maneuver, and during a post-incident inspection of the boat, investigators discovered that the safety lanyard attached to the kill switch had been "cut off," rendering the boat incapable of being shut off in the event it became unmanned.

15. Mr. Fleming knew a kill switch was required. He knew it was likely people would be thrown from the boat if he attempted a high speed "emergency stop." He knew he was exposing his passengers to a potential circle of death, and yet he still attempted this improper, deadly maneuver. The consequences of his action were foreseeable and resulted in one of the exact outcomes kill switches are intended to prevent.

16. Defendant's systemic failure (through the actions of USACE's Jess Fleming) caused Plaintiff and Decedent's severe harms and losses.

## JURISDICTIONAL ALLEGATIONS

17. Krystal Leanne Hodges (hereinafter "Plaintiff" or "wife") is the duly appointed Personal Representative of the Estate of Devin Pressley Hodges (hereinafter "Hodges" or "Decedent"), having been appointed by the Greenwood County Probate Court on August 1, 2017.

18. Plaintiff brings this action against the United States of America (hereinafter "USA" or "Defendant") for injuries and damages Plaintiff and Decedent sustained as the result of the USA's (and its agents and/or employee's) negligence, recklessness and/or gross negligence.

19. This action is brought against USA pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq and 28 U.S.C. § 1346(b)(1) for money damages as compensation for injuries to Plaintiff and Decedent, caused by the acts of employees, servants, and agents of the United States Government, working for the USACE.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the acts complained of occurred in the Anderson Division of the United States District Court.

21. In addition, venue is proper in this Court in that all, or a substantial part of, the acts and/or omissions forming the basis of these claims occurred in the Anderson Division.

22. Plaintiff fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal written notice to the USA through the filing of a Form 95 with the Office of the Chief of the Army Corp of Engineers (hereinafter, "USACE") on October 30, 2017.

23. USACE has not attempted to settle Plaintiff and Decedent's case and there has been no resolution of Plaintiff and Decedent's claims to date.

24. More than six months have passed since the Form 95 was filed and though there has been no official denial of Plaintiff and Decedent's claim; suit is being filed since there has been no resolution of Plaintiff's Form 95 claim.

25. Upon information and belief, Defendant has staff who are its agents, servants, and employees, and all acts or omissions complained of herein, performed by said agents, servants, and employees, occurred during the course and scope of such agency and/or employment and is imputed to Defendant.

26. The negligent acts, omissions, and liability of Defendant includes its agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior.

**FACTUAL ALLEGATIONS**

27. This action concerns the negligence, recklessness, and/or gross negligence of Jess Fleming, a USACE employee (a division of the USA), which caused the death of Anderson County Sheriff's Deputy Devin Hodges.

28. On or about June 1, 2017, Decedent was an ACSO Deputy.

29. Hodges was receiving boat-safety training with Juvan Chau, another Anderson County Sheriff's Deputy.

30. USACE's Jess Fleming was providing the training.

31. The training took place on Lake Hartwell near Starr, South Carolina, in Anderson County.

32. As part of the training, Mr. Fleming was instructing Deputies Hodge and Chau on how to perform various boating maneuvers, including a maneuver Mr. Fleming called an "emergency stop."

33. The "emergency stop" consisted of operating the ACSO boat at a high rate of speed towards a buoy – until the boat got within thirty feet of the buoy – at which point the operator would steer the boat very hard to the left while quickly reducing the throttle.

34. The purpose of this maneuver is to expose the right side of the boat and use the resulting drag to bring the boat to a quick stop.

35. The dangers of an "emergency stop" maneuver, particularly at a high rate of speed, were well known to Mr. Fleming at the time, and include potentially throwing everyone, including the operator, overboard.

36. Mr. Fleming first attempted the "emergency stop" maneuver at half throttle without incident.

37. Mr. Fleming then attempted the maneuver at a higher rate of speed, at which time all three occupants were thrown from the boat.

38. Following the occupants' ejection from the boat, the boat did not shut off, but traveled in a circle near its former occupants in what is commonly referred to as a "circle of death."

39. Mr. Fleming, due to his prior years of training, was well aware of the dangers of the "circle of death."

5

40. To keep an unmanned boat from engaging in a circle of death, boats are equipped with "kill switches."

41. Typically, one end of a lanyard is attached to the kill switch and the other is attached to the operator of the boat.

42. The purpose of the kill switch and attached safety lanyard is that if the operator is thrown out of the boat or moves away from the console, and is no longer in control of the boat, the lanyard will pull out of the kill switch.

43. When the lanyard is pulled out of the kill switch, the engine will immediately turn off, or be "killed."

44. This prevents an unmanned boat from continuing down the waterway, or engaging in a circle of death, such as the one that took Deputy Hodges' life.

45. On the morning of June 1, 2017, Mr. Fleming did not discuss the operation of the kill switch and/or safety lanyard with the ACSO deputies.

46. Mr. Fleming did not attach the safety lanyard to himself prior to performing the emergency stop maneuver.

47. Mr. Fleming warned the deputies, prior to the maneuver, that he could throw all occupants overboard.

48. Mr. Fleming knew the emergency stop maneuver was dangerous.

49. Yet, having this knowledge, he still attempted this maneuver without a kill switch, throwing the boat's occupants into the lake and the boat into a circle of death.

50. Because of Fleming's failure to take this simple, mandatory safety precaution, the boat continued to run in a circle around and near its former occupants.

51. Despite his panicked efforts, Deputy Hodges was unable to avoid the speeding boat as it rotated in its "circle of death."

6

52. The boat quickly ran down Hodges and as it passed over the top of him, its propeller struck and sliced Deputy Hodges repeatedly.

53. As the boat beat the life out of him, Deputy Hodges life vest became entangled in the propeller.

54. As his life vest became entangled in the propeller, Deputy Hodges was pulled down under the water.

55. While Deputy Hodges was being held under water, within inches of the surface, he slowly drowned.

56. Deputy Hodges could be heard under the water pleading for his life.

57. Despite the efforts of others, they were essentially helpless, and they could not free Deputy Hodges before he died.

58. It was improper for Jess Fleming to attempt an emergency stop at nearly full speed.

59. This was not a maneuver that was within his discretion, as a safety instructor, to perform.

60. There was no appropriate reason for this type of maneuver, other than Fleming trying to "show-off" his skills as a boat operator.

61. Jess Fleming investigated marine accidents in the past.

62. Fleming instructed others on the safe use of boats and/or marine vessels.

63. Fleming knew the danger of this maneuver and knew it was unnecessary.

64. Fleming was reckless in performing this unsafe, unnecessary maneuver, without ensuring there was an operational kill switch.

65. All reasonable regulations deem it mandatory to have and use an operable kill switch, particularly when performing high risk maneuvers like the emergency stop attempted by Fleming.

66. Fleming's actions/inactions resulted in an unmanned vessel engaging in a circle of

death, killing Deputy Hodges.

67. Jess Fleming's negligent, reckless, willful, wanton, and grossly negligent actions caused Deputy Hodges to suffer blunt force trauma, various traumatic injuries, and death from drowning.

68. None of the USA's or Fleming's actions and/or inactions which contributed to Devin Hodges' death were discretionary.

69. All of the USA and/or its employees' actions and inactions which contributed to Devin Hodges' death were failures of mandatory safety, personnel, and/or training measures.

### FOR A FIRST CAUSE OF ACTION
(Wrongful Death)

70. Plaintiff reiterates the above paragraphs as if set forth verbatim herein.

71. The USA, through the actions of Jess Fleming, an employee of the USACE, had a duty to train the ACSO deputies, specifically Devin Hodges, in a proper, safe, and responsible manner.

72. The USA, through the actions of Jess Fleming, an employee of the USACE, had a duty to train the ACSO deputies, specifically Devin Hodges, in a manner that did not expose him to unnecessary danger and preventable death through the violation of mandatory boating safety rules.

73. The USA, through the actions of Jess Fleming, an employee of the USACE, breached those duties and was negligent, reckless, grossly negligent, willful and/or wanton regarding the following acts and/or omissions:

  a. In operating the ACSO vessel without a safety lanyard;

  b. In operating the ACSO vessel without an operational kill switch;

  c. In failing to inspect the ACSO boat to discover there was not an operable kill switch;

  d. In attempting a knowingly dangerous, improper boating maneuver without proper

      safety equipment activated and/or operational;

e. In knowing he risked throwing his passengers and himself from the boat without ensuring a mandatory safety kill switch was operable;

f. In willingly and negligently placing the ACSO deputies in the path of a boat engaging in a "circle of death" by violating mandatory boating safety rules;

g. In failing to follow safety protocols for operating the vessel in a safe manner including ensuring the mandatory kill switch was in place and operable;

h. In demonstrating the emergency stop maneuver at full speed, thereby unnecessarily endangering the lives of himself and his passengers;

i. In failing to have in place policies and procedures to train and/or monitor its employees, or if such procedures were in place, in failing to enforce them;

j. In failing to have in place adequate policies and procedures to mandate compliance by its employees with statutes, laws, and regulations regarding the safe operation of boats, or if such policies and procedures were in place, in failing to enforce them;

k. In failing to have in place an adequate safety program for USACE employees undertaking the training maneuvers for law enforcement personnel, or if such program was in place, in failing to implement it;

l. In failing to ensure that Jess Fleming understood the gravity of his harm to potential victims of his attempting to "show off";

m. In entrusting Hodges' training to Jess Fleming when the USACE knew, or should have known, that Fleming would not conduct the training in a safe manner;

n. In failing to properly investigate Jess Fleming's driving record and/or ability to drive to ensure that he possessed the requisite skill and attention to maintain

    control of a boat while training law enforcement deputies on marine safety;

  o. In failing to ensure that Jess Fleming had sufficient, adequate, and current training, credentials, and skills to properly train law enforcement deputies on marine safety, including the failure to have an operational kill switch during the training;

  p. In generally failing to use the degree of care and caution that a reasonably prudent entity would have used under the same or similar circumstances; and,

  q. In such other ways as may be shown through discovery and in the trial of this case.

74. As a proximate result of Defendant's (through Jess Fleming, a USACE employee) negligence, gross negligence, recklessness, and willful and wanton actions/inactions, Decedent suffered from severe debilitating injuries and drowning which resulted in his death. The USA's negligence and that of its employee caused Plaintiff and Decedent's beneficiaries to lose his support, aid, society, comfort, and companionship. Decedent's beneficiaries, through the personal representative of his estate, are therefore entitled to recover from Defendant a sum of money to compensate the heirs at law for all damages allowable under the South Carolina Wrongful Death Act. All damages should be in an amount determined by a judge at trial.

## FOR A SECOND CAUSE OF ACTION
(Survival Action)

75. Plaintiff reiterates the above paragraphs as if set forth herein verbatim.

76. As a proximate result of Defendant's (through Jess Fleming, a USACE employee) negligence, gross negligence, recklessness, and willful and wanton actions/inactions, Decedent suffered from severe debilitating injuries and entrapment under water which caused him pain and suffering while alive, caused his estate to incur medical bills, and caused expenses associated with a funeral and other damages allowed to be recovered pursuant to a survival action. Plaintiff, as

personal representative of his estate, is therefore entitled to recover from Defendant a sum of money to compensate Decedent's estate for all damages allowable under the survival action. All damages should be in an amount determined by a judge at trial.

## FOR A THIRD CAUSE OF ACTION
(Loss of Consortium)

77. Plaintiff reiterates the above paragraphs as if set forth herein verbatim

78. As a direct and proximate result of Defendant's (through Jess Fleming, a USACE employee) negligence, gross negligence, recklessness, and willful and wanton actions/inactions, Mrs. Hodges suffered a loss of consortium. She is therefore entitled to an award of damages to compensate her for the loss of her husband's society, comfort, companionship, and support. Additionally, she lost income by a loss of earnings capacity and through the necessity of providing extraordinary medical care for her children, which her husband assisted with during his life. She is therefore entitled to an award of actual and consequential damages in an amount determined by a judge at trial.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for actual damages, special damages, and consequential damages in an amount to be determined by a judge at trial, for the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

*Signature on following page*

11

**MCGOWAN HOOD & FELDER, LLC**

s/S. Randall Hood
S. Randall Hood (Federal ID# 6103)
MCGOWAN, HOOD, & FELDER, LLC1539 Health Care Drive
Rock Hill, South Carolina 29732
803-327-7800 (phone)
rhood@mcgowanhood.com

Shawn B. Deery (Federal ID# 9819)
MCGOWAN, HOOD, & FELDER, LLC
1517 Hampton Street
Columbia, S.C. 29201
(803)779-0100 (phone)
sdeery@mcgowanhood.com

**LAW OFFICE OF KENNETH E. BERGER, LLC**

Kenneth E. Berger (Federal ID # 11083)
Bradley L. Lanford (Federal ID # 9371)
LAW OFFICE OF KENNETH E. BERGER, LLC
5205 Forest Drive Suite Two
Columbia, South Carolina 29206
(803) 790-2800
kberger@bergerlawsc.com
blanford@bergerlawsc.com

Rock Hill, South Carolina

August 7, 2018